IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

B.C.,[1]

        Plaintiff,

v.                                                                                                  Case No. 20-1108-JWB

ANDREW SAUL,
*Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 11, 12, 13.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of

performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

## II. Background and Procedural History

Plaintiff filed an application for disability insurance benefits, alleging a disability beginning January 25, 2018, when she was 51 years of age. (Tr. at 10.[2]) Her claim was denied administratively both initially and upon reconsideration. Plaintiff then requested an evidentiary hearing before an Administrative Law Judge (ALJ), which was held on January 16, 2019, in Wichita, Kansas, before ALJ Michael Werner. Plaintiff appeared and testified at the hearing. A vocational expert, Theresa Wolford, testified by telephone. (*Id.* at 37.) The ALJ issued a written opinion denying Plaintiff's application on April 29, 2019. (*Id.* at 10.)

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 25, 2018. (*Id.* at 12.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: knee disfunction, obesity, anxiety disorder, and depressive disorder. (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id.* at 13.)

The ALJ next determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: Plaintiff can lift and/or carry, push and/or pull

---

[2] Citations to "Tr." refer to Bates page numbers in the administrative transcript. (Doc. 10.)

20 pounds occasionally and 10 pounds frequently; she can sit, with normal breaks, for a total of 6 hours per 8-hour workday, and stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday; she can frequently climb ladders, ropes, or scaffolds; she can frequently kneel and crouch and occasionally crawl; she can understand, remember, and apply instructions, and maintain concentration and pace to perform simple and intermediate tasks (jobs SVP 4 and below); she can make decisions commensurate with those tasks and adapt to occasional changes in the work environment; she can tolerate occasional interaction with coworkers in jobs that do not require teamwork or tandem tasks for the completion of assignments; and she can tolerate occasional interaction with supervisors and the general public. (*Id.* at 15.)

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a baker. (*Id.* at 21.) Finally, at step five, the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy. Citing the testimony of the vocational expert, the ALJ found Plaintiff can perform the requirements of representative SVP 2, unskilled jobs at the light exertional level, including: routing clerk (Dictional of Occupational Titles [DOT] code 222.687-022; 74,788 jobs in the national economy), cleaner housekeeping (DOT code 323.687-014; 371,379 jobs in the national economy), and folding machine operator (DOT code 208.685-014; 119,960 jobs in the national economy).

Plaintiff argues the ALJ erred by failing to include sufficient limitations in the RFC concerning Plaintiff's need to elevate her legs and by failing to explain the omission of that limitation. (Doc. 11 at 13.)

**III. Analysis**

The ALJ engaged in a thorough examination of the evidence in the record, including the evidence relating specifically to Plaintiff's complaints of knee pain. The ALJ noted Plaintiff had

a history of knee pain and obesity and concluded it would limit Plaintiff to work at the light exertional level. (Tr. at 16.) As the ALJ recounted, Plaintiff reported in January 2018 that she had suffered from bilateral knee pain for several years. (Tr. at 16.) She described the pain as moderate, with symptoms including pain with stairs, locking, popping, and giving way, and reported having had knee surgery four years previously. (*Id.* at 292.) Plaintiff's family physician, Dr. Steven Scheufler, characterized her knee symptoms at that point as stable and nonprogressive[3]; noted an exam showed normal gait and pain with range of motion; and recommended avoiding re-injury, kneeling, and squatting, as well as using ice therapy, a compression wrap, and engaging in active range-of-motion. He renewed her prescription for the pain reliever Norco. (*Id.* at 292-94.)

On March 15, 2018 Plaintiff reported an injury to her left knee from a fall on March 11. She described the pain as severe and described symptoms similar to those previously reported (pain with stairs, locking, popping and giving way of the knee), but denied associated joint stiffness, swelling or crepitation. (Tr. at 549.) Dr. Scheufler's examination noted pain with range of motion in the knees but normal gait. He diagnosed joint pain and left knee pain. (*Id.* at 550-51.) His recommendation included "avoid re-injury, avoid kneeling and squatting, ice therapy, using a compression wrap, … and active ROM." (*Id.* at 550.)

As the ALJ recounted, Dr. Scheufler completed a medical source statement for Plaintiff shortly after the foregoing injury, on March 29, 2018. (Tr. at 539.) In the statement, Dr. Scheufler diagnosed Plaintiff with M25.562 [left knee pain]; described her symptoms as "chronic pain secondary to knee problems" (noting a history of knee surgery); indicated the pain bothers Plaintiff

---

[3] Medical records indicate a two-year prior history of similar exams and treatment by Dr. Scheufler. *See e.g.,* Tr. at 310-11 (March 9, 2017 visit included knee pain; no gross edema but pain upon palpation; recommend RICE [rest, ice, elevation], active range of motion, and continue Norco as needed); Tr. at 308 (May 9, 2017 exam noted normal gait; recommendation includes exercise and weight loss); Tr. at 304-05 (June 9, 2017 symptoms include pedal edema; normal gait; pain medication renewed); Tr. at 297 (September 11, 2017 diagnosis of bilateral knee pain; recommend avoiding re-injury, avoid kneeling and squatting; use ice therapy and compression wrap; active range of motion and increase physical activity.)

day and night and at times "is 10/10 per [patient];" and stated that Plaintiff's pain medication [Norco] causes her some nausea and drowsiness. (*Id.*) In a series of questions and check boxes in the statement, Dr. Scheufler indicated Plaintiff could occasionally lift/carry 20 pounds; occasionally twist and balance; constantly stoop, crouch, crawl, and climb; indicated that limitations on use of her hands and arms meant she could only rarely engage in reaching or handling and occasionally engage in fingering or feeling.[4] (*Id.* at 540.) He indicated Plaintiff could sit for less than two hours of an eight-hour working day (with normal breaks), could stand for less than two hours in an eight-hour day, and would need to shift positions at will from sitting, standing, or walking. (*Id.*) Scheufler indicated Plaintiff would need to take unscheduled breaks every two hours of an eight-hour day due to pain or related symptoms. In a section titled "Elevate Legs," Scheufler indicated Plaintiff would need to elevate her legs "above [her] heart] for "30%" of an eight-hour day due to "pain, [and] swelling/edema of legs." (*Id.* at 541.) Scheufler additionally indicated Plaintiff would be off task (unable to maintain attention and concentration) 20% of the time, could tolerate no more than low stress work, and would have good days and bad days requiring that she miss or leave work early three days per month. (*Id.*)

Plaintiff's records from a subsequent visit on June 26, 2018 noted a normal gait and pain with range of motion in the knees. Plaintiff was diagnosed with joint and left knee pain and edema, which was assessed as 1+ pedal edema [on a 1-4 scale, with 1 being less and 4 being more]. Her prescriptions (which included Lasix to be taken as needed for swelling) were continued and the recommendations for knee pain included RICE therapy and instructions to call if pain worsened. Recommendations for edema included "elevation of the legs as much as possible, restriction of sodium intake, and use of support hose." (Tr. at 576-77.)

---

[4] In addition, "handling" was marked both as "occasionally" and "rarely." (*Id.*)

At a September 25, 2018 follow-up, Plaintiff again characterized her knee pain as severe. Her gait was noted as normal, she had pain with range of motion in the knees, and 1+ pedal edema was observed. For knee pain, Dr. Scheufler prescribed Celebrex and recommended RICE therapy. (*Id.* at 573.)

At an October 9, 2018 follow-up, Plaintiff described her knee pain as moderate with symptoms similar to the ones reported previously. She indicated the Celebrex was "helping some." (Tr. at 570.) Normal gait and pain with range of motion were noted. Treatment recommendations included no change in medications, avoiding re-injury as well as kneeling and squatting; using RICE therapy and compression wrap, and calling if symptoms worsened. (*Id.* at 571.)

At an October 26, 2018 visit, Plaintiff reported left foot pain with pain and swelling. An examination showed no edema, an antalgic gait, and pain elicited on palpation. Dr. Scheufler diagnosed posterior tibialis tendonitis, prescribed a steroid, and referred Plaintiff to a podiatrist. (*Id.* at 568-69.)

At a November 5, 2018 visit with podiatrist Anthony Elliot, Plaintiff reported her foot and ankle pain was 4 out of 10. Moderate edema and moderate antalgic gait were noted. Plaintiff was dispensed a "CAM" walking boot and told to take Aleve. (*Id*. at 582-83.) By December 17, 2018 Plaintiff rated the pain at 1 out of 10 with use of the boot. No remaining pain to palpation was noted, there was no edema overlying the tendon, and there was no reported pain with barefoot walking. Plaintiff was dispensed an orthotic insert and instructed to call if needed. (*Id.* at 579.)

The ALJ engaged in a thorough review of the foregoing evidence and found that although Plaintiff's documented knee pain was likely exacerbated to some extent by her obesity, the lack of objective findings in the medical records indicated she would be capable of light work consistent with the RFC set forth. (*Id.* at 17.) The ALJ's assessment included review of the various medical

opinions, including those of state agency consultants Drs. James Schell and Charles Korte, whose opinions the ALJ ultimately found persuasive because they were well supported by and consistent with medical evidence in the record.  (*Id.* at 20.)  Those doctors both concluded Plaintiff was capable of performing light work, including standing and/or walking and sitting for six hours of an eight-hour day.  (*Id.* at 80.) The ALJ contrasted the opinions of these doctors with the March 29, 2018 opinion of Dr. Scheufler, which the ALJ summarized and rejected as not consistent with the medical evidence.  (*Id.* at 20.)

Plaintiff's argument that the ALJ erred by not more specifically addressing Dr. Scheufler's suggested limitation for leg elevation is not persuasive.  It is true that an ALJ is "not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted.)  But Scheufler's opinion was contradicted by the opinions of other medical professionals whom the ALJ found more persuasive.  Moreover, the ALJ's assessment of Dr. Scheufler's March 29 opinion was sufficient to show that he found the opinion unpersuasive as a whole and the ALJ explained his reasons for that finding.  (*See id.* at 20) ("The undersigned finds unpersuasive the opinion of Dr. Steven Scheufler, M.D., dated March 29, 2018…. Overall, this opinion is not consistent with the medical evidence of record….")  As the ALJ's findings indicate, the limitations indicated by Dr. Scheufler in his March 29 opinion were inconsistent with the other medical opinions and were not consistent with medical records.  In contrast to the extreme limitations suggested by Dr. Scheufler, the records cited by the ALJ showed Plaintiff was able to walk normally throughout the period of alleged disability except for a brief period surrounding an injury to her left foot, and "[e]ven then, her gait was recently noted to be nonantalgic."  (*Id.*)  The ALJ also pointed out there were apparent internal inconsistencies in Scheufler's opinion, such as his

opinion that Plaintiff could constantly climb but could only stand for two hours a day.  (*Id.*)  The ALJ also pointed out that Dr. Scheufler "included manipulative limitations, which are not supported by the objective medical evidence, despite listing knee pain as the only impairment and not providing further explanation."  (*Id.*)

As Judge Lungstrum recently noted, under new regulations governing claims such as this one filed after March 27, 2017, "ALJs are to focus on how persuasive a medical source's opinions are and not on how much weight they should be or have been given."  *Tammi F. v. Saul*, No. CV 20-1079-JWL, 2020 WL 7122426, at *6 (D. Kan. Dec. 4, 2020) (citing 20 C.F.R. § 404.1520c) (2017).  "An ALJ is to base persuasiveness primarily on the factors of consistency and supportability and must articulate in her decision how she considered these factors."  *Id.*  The ALJ clearly did so here, explaining why he found Dr. Scheufler's March 29 opinion unpersuasive and why he found other doctors' opinions more persuasive, placing special emphasis on consistency with objective medical evidence in the record.  Arguments that an ALJ "was required to provide explanation for discounting every individual limitation in [a doctor's opinion] … are firmly planted upon case law based on interpretation of the former regulations' requirement that ALJs weigh the medical opinions and explain the weight accorded to each opinion."  *Id.* (citations omitted) (underlining in original.)  "The new regulations do not require the ALJ to articulate an explanation for how persuasive she finds every individual opinion of a medical source."  *Id.*

The ALJ applied the correct legal standard here and made a decision that was supported by substantial evidence in the record.  The mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of the ALJ.  *Tammy F.,* 2020 WL 7122426, at *7; *Lax,* 489 F.3d at 1084 ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we

9

will not reweigh the evidence or substitute our judgment for the Commissioner's.") (citation omitted.)

### IV. Conclusion

The decision of the Commissioner denying Plaintiff's application is AFFIRMED. The clerk is directed to enter judgment accordingly. IT IS SO ORDERED this 5th day of February, 2021.

                                    _____s/ John W. Broomes_____
                                    JOHN W. BROOMES
                                    UNITED STATES DISTRICT JUDGE